DEBORAH A. LOMBARDI *v.* CALVIN G. COBB ET AL.
(AC 27524)

Flynn, C. J., and Lavine and West, Js.

Argued November 27, 2006—officially released February 27, 2007

*John W. Mills*, for the appellants (defendants).

*Mary M. Puhlick*, for the appellee (plaintiff).

*Opinion*

WEST, J. The defendants, Calvin G. Cobb and Calvin T. Cobb, appeal from the judgment of the trial court setting aside the jury verdict in favor of the plaintiff, Deborah A. Lombardi, and ordering a new trial on the issue of damages after the defendants refused to accept a court-ordered additur. On appeal, the defendants claim that the court improperly granted the plaintiff's motion to set aside the verdict and for additur. We affirm the judgment of the trial court.

Shortly before 7 a.m. on March 5, 2003, the plaintiff stopped her motor vehicle on Old Jewett City Road in Preston because it could not climb an icy hill. Her vehicle then was struck from behind by a vehicle driven by Calvin G. Cobb. The plaintiff subsequently filed a complaint against Calvin G. Cobb and the owner of his vehicle, Calvin T. Cobb, alleging that she had suffered injuries to her back, neck and shoulders as a result of the accident. After a trial, the jury returned a verdict in favor of the plaintiff and awarded her $3293.16 in economic damages, representing the entire amount of medical expenses and lost wages that she had claimed. The jury did not award her any noneconomic damages for pain and suffering. Thereafter, the plaintiff filed a motion to set aside the verdict and for additur.

In its memorandum of decision, the court found that the jury's failure to award noneconomic damages was inconsistent with its finding that the defendants were liable for the plaintiff's injuries and with the lack of evidence that the plaintiff had any preexisting condition. The court therefore concluded that the jury must have been "governed by mistake, ignorance, prejudice, corruption or partiality" and stated that the verdict "shock[ed] the conscience of the court and suggest[ed] that the plaintiff was awarded inadequate damages." The court ordered a $5000 additur, but the defendants rejected it. The court then set aside the verdict and ordered a new trial on the issue of damages.[1] The defendants subsequently filed this appeal.[2]

"[I]t is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption. . . . [A] court's decision to set aside a verdict and to order an additur . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness." (Citation omitted; internal quotation marks omitted.) *Snell* v. *Beamon*, 82 Conn. App. 141, 145, 842 A.2d 1167 (2004).

[1] General Statutes § 52-228b provides that the court must give the parties an opportunity to accept or to reject a court-ordered additur before it may set aside the jury verdict and order a new trial.

[2] General Statutes § 52-228a provides that "[i]n any jury case where the court orders a decrease in the amount of the judgment or an increase in the amount of the judgment, the party aggrieved by the order of remittitur or additur may appeal as in any civil action. The appeal shall be on the issue of damages only, and judgment shall enter upon the verdict of liability and damages after the issue of damages is decided."

"[T]he jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do. . . .

"The evidential underpinnings of the verdict itself must be examined. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work [its] will." (Citations omitted; internal quotation marks omitted.) *Wichers* v. *Hatch*, 252 Conn. 174, 188–89, 745 A.2d 789 (2000) (en banc).

It is helpful to survey some of the many cases that have dealt with the issue presented by the defendants' claim. In cases in which it was appropriate to set aside the verdict and to order an additur, the jury reasonably could not have declined to award noneconomic damages. See, e.g., *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 332–34, 789 A.2d 459 (2002) (jury inconsistently found defendant liable for plaintiff's surgery expenses but not liable for pain attendant to that surgery and clearly did not credit evidence of plaintiff's unrelated injuries); *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, 92 Conn. App. 481, 488–89, 886 A.2d 461 (2005) (jury necessarily found plaintiff had experienced pain, and there was no evidence plaintiff had preexisting condition), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006); *Snell* v. *Beamon*, supra, 82 Conn. App. 146–47 (jury's failure to award noneconomic damages

palpably against evidence); *Elliott* v. *Larson*, 81 Conn. App. 468, 477, 840 A.2d 59 (2004) (jury necessarily found plaintiff suffered pain and could not work). In cases in which it was not appropriate to set aside the verdict and to order an additur, the jury reasonably could have chosen not to award noneconomic damages. See, e.g., *Medes* v. *Geico Corp.*, 97 Conn. App. 630, 638–39, 905 A.2d 1249 (conflicting evidence as to extent of injuries and their effect on plaintiffs' daily lives), cert. denied, 280 Conn. 940, 912 A.2d 476 (2006); *Smith* v. *Lefebre*, 92 Conn. App. 417, 423–27, 885 A.2d 1232 (2005) (conflicting evidence as to nature and extent of injuries); *Turner* v. *Pascarelli*, 88 Conn. App. 720, 728–31, 871 A.2d 1044 (2005) (conflicting evidence as to severity and duration of pain and extent to which plaintiff recovered from prior injuries); *Schettino* v. *Labarba*, 82 Conn. App. 445, 449–50, 844 A.2d 923 (2004) (conflicting evidence as to cause of injuries).

Our examination of the circumstances of the present case leads us to determine that the court correctly concluded that the jury's verdict was inconsistent. The jury awarded the plaintiff the entire amount of medical expenses and lost wages that she had claimed but did not award her any noneconomic damages. Because the plaintiff's medical expenses and lost wages related to her treatment for back and shoulder pain, the jury necessarily found that she had experienced pain, and it therefore should have awarded her noneconomic damages.[3] The jury reasonably could not have attributed

---

[3] The dissent argues that the plaintiff's treatment for pain does not compel the conclusion that she suffered pain and that the jury might not have credited her testimony that she experienced pain. As the dissent points out, however, the plaintiff obtained two prescriptions for pain medications. Those prescriptions presumably would not have been given to the plaintiff unless they were necessary, and the jury presumably would not have compensated her for them unless it found that they were legitimate. Furthermore, the defendants failed to present any conflicting evidence regarding the plaintiff's pain, such as testimony by a medical expert that the plaintiff probably did not suffer pain.

the plaintiff's pain to any preexisting condition because there was no evidence of any such condition. We conclude that the court properly granted the plaintiff's motion to set aside the verdict and for additur.

The judgment is affirmed.

In this opinion FLYNN, C. J., concurred.

LAVINE, J., dissenting. After listening to the evidence in this case and assessing the testimony of the plaintiff, Deborah A. Lombardi, the jury decided to award $3293.16 in economic damages, the entire amount of medical expenses and lost wages claimed. The jury also decided to award no noneconomic damages for pain and suffering. The trial court granted the plaintiff's motion to set aside the verdict and for additur, concluding that the jury's failure to award noneconomic damages for the plaintiff's pain and suffering must have been "governed by mistake, ignorance, prejudice, corruption or partiality" and that the verdict "shock[ed] the conscience of the court . . . ." The majority, upholding the trial court's judgment, concluded that "[b]ecause the plaintiff's medical expenses and lost wages related to her treatment for back and shoulder pain, the jury necessarily found that she had experienced pain, and it therefore should have awarded her noneconomic damages." I disagree with these conclusions for the following reasons.

First, I believe that in ruling as it did, the trial court ran afoul of *Turner* v. *Pascarelli*, 88 Conn. App. 720, 871 A.2d 1044 (2005), which requires the court to "identify the facts of record that justify the extraordinary relief of additur"; id., 723–24; and requires this court "to inquire whether the facts so identified justify the trial court's exercise of its discretion to set a jury verdict aside because of its perceived inadequacy." Id., 724. I believe that the trial court's conclusory statement that

the jury's verdict must have been "governed by mistake, ignorance, prejudice, corruption or partiality" fails to identify sufficient facts to justify this ruling.

On the basis of my review of the evidence presented at trial, the jury reasonably could have found that the plaintiff was a licensed practical nurse at Sava Senior Center (center) in Mystic, where she managed the subacute care unit by coordinating physician direct plans. As she was driving to the center on the morning in question, her automobile was unable to gain traction and stopped while going up a hill. As she was about to exit her vehicle, she saw a black pickup truck pass her vehicle on the left and move to the right in front of her. She neither felt nor heard an impact on her automobile. The pickup truck, however, had "clipped the corner" of the plaintiff's vehicle, according to the defendant operator, Calvin G. Cobb, who was traveling at thirty miles per hour. He testified that "[i]t was my right front quarter panel and her left rear." According to the investigating state police trooper, the damage to both vehicles was minor.

The plaintiff told the state trooper that she was not injured. Although she declined an offer from emergency medical personnel to take her to a hospital, the plaintiff saw her primary care physician later that day and was given a prescription for Motrin. The plaintiff did not work for three days. The plaintiff next saw her primary care physician on March 27, 2003, and complained of stiffness and pain in her upper arm and shoulders. She was given a prescription for Skelaxin and referred to Mohammad Pasha, a physician specializing in physical medicine and rehabilitation. Pasha ordered physical therapy and a nerve conduction study of the plaintiff's right arm. The results of the nerve conduction study were within normal limits. The plaintiff was released from Pasha's care at the end of June, 2003, but saw

him again in February, 2004, at which time she was assessed for a disability rating for this action.

In light of all the evidence, including its evaluation of the plaintiff's credibility, the jury reasonably could have found that the plaintiff failed to prove that she had in fact suffered compensable pain and suffering. "Whether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *Smith*, 99 Conn. App. 116, 136, 912 A.2d 1080 (2007).

Second, I disagree with the majority's conclusion that the jury's verdict was necessarily inconsistent. The jury instruction nowhere specified that the jury was required to award noneconomic damages merely because it awarded all of the economic damages that the plaintiff sought. The plaintiff did not perceive the impact, and her injuries were not substantial. The jury, in its commonsense assessment of the case and evaluation of the plaintiff's credibility, might well have believed that she either sought medical treatment as an appropriate precautionary measure or in anticipation of possible litigation but that she failed to prove that she had actually suffered compensable pain. The flaw in the majority's logic is in assuming that because a plaintiff has obtained *treatment* to address pain and suffering, the plaintiff has of necessity *experienced* pain and suffering.

Finally, while one might disagree with the jury's decision not to award noneconomic damages, it is hyperbole to say that the jury's decision "shocks the conscience . . . ." Given all of the facts, although another jury might have returned a different verdict, the jury's decision to award no noneconomic damages seems quite reasonable to me. I believe the trial court, with the best

of intentions, improperly substituted its judgment for that of the jury.

For these reasons, I respectfully dissent and would reverse the judgment and remand the case with direction to reinstate the jury's verdict.